# Supreme Court of Florida

_____

No. SC12-1507
_____

**REGINALD L. BRYANT,**
Petitioner,

vs.

**STATE OF FLORIDA,**
Respondent.

[October 9, 2014]

PERRY, J.

We have for review the decision in Bryant v. State, 93 So. 3d 381 (Fla. 2d

DCA 2012), in which the Second District Court of Appeal held that where a

sentence was erroneous because the trial court failed to file the required written

findings to support a departure, the trial court may again impose a departure

sentence on remand. The district court certified conflict with the Fifth District

Court of Appeal's decision in Goldberg v. State, 76 So. 3d 1072 (Fla. 5th DCA

2011), which reached the opposite conclusion based on similar facts. We have

jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons explained below, we

quash the Second District's decision in <u>Bryant</u> and approve the decision in <u>Goldberg</u>.

## BACKGROUND

Reginald Bryant was charged with the crimes of robbery (Count I) and felony petit theft (Count II), and the jury found him guilty of the lesser included offense of petit theft on the first count and guilty as charged on the second count. At the sentencing hearing, the trial judge dismissed Count I and sentenced Bryant to a five-year prison sentence on Count II only. Bryant's offense was subject to the Criminal Punishment Code (CPC). <u>See</u> ch. 921, Fla. Stat. (2009). However, under section 775.082(10), Florida Statutes, Bryant was entitled to a nonstate prison sanction unless the trial court made written findings that doing so "could present a danger to the public." § 775.082(10), Fla. Stat. (2009). Here, "the parties agree and the record indicates that the trial court sentenced Bryant to a five-year prison sentence—despite the fact that he only scored 17.1 sentencing points—without making any written findings to support the upward departure." <u>Bryant</u>, 93 So. 3d at 383; § 775.082(10), Fla. Stat.

Bryant appealed to the district court and filed a motion to correct sentencing error in the trial court under Florida Rule of Criminal Procedure 3.800(b)(2). <u>Bryant</u>, 93 So. 3d at 382. In each proceeding, he argued that because the trial court failed to enter the written findings required by section 775.082(10), the upward

- 2 -

departure sentence must be vacated and he must be resentenced to a nonstate prison sentence in accordance with his scoresheet. Id. The trial court orally denied the rule 3.800(b)(2) motion and again failed to enter written findings supporting the departure sentence.

## Certified Conflict

In Bryant's direct appeal, the Second District accepted the State's argument that despite the trial court's error in failing to enter written findings, examination of the "record support[ed] a finding that sentencing Bryant to a non-state prison sentence would have presented a pecuniary danger to the public based on his prior record." Bryant, 93 So. 3d at 383. The district court "agree[d] with the State that the 'danger to the public' contemplated by section 775.082(10) may be a pecuniary one" and that the "record indicate[d] that such was the basis for the trial court's imposition of a prison sanction." Id. Accordingly, the Second District remanded for resentencing, "at which the trial court may again impose a prison sanction if it makes the proper written findings." Id. (citing State v. Collins, 985 So. 2d 985, 989 (Fla. 2008)). In justification of its decision, the Second District stated:

> We note that this is not a case in which the trial court provided reasons for a departure sentence that on appeal were determined to be invalid departure reasons. See Shull v. Dugger, 515 So. 2d 748, 750 (Fla. 1987) ("[A] trial court may not enunciate new reasons for a departure sentence after the reasons given for the original departure sentence have been reversed by an appellate court."). Rather, the trial court failed to specify in writing its reasons for departing. As such, "the underlying reason for [the] decision in Shull—preventing after-

- 3 -

the-fact justifications for a previously imposed departure sentence—is not implicated here." Collins, 985 So. 2d at 992.

Bryant, 93 So. 3d at 383. The Second District certified conflict with the Fifth District's holding in Goldberg.

In Goldberg, Jeffery Goldberg was convicted of grand theft from a person sixty-five years of age or older, and was sentenced to three years' imprisonment despite scoring less than twenty-three points on his sentencing scoresheet. Goldberg, 76 So. 3d 1073. The trial court failed to make written findings that a non-state prison sanction could present a danger to the public. Id. at 1074. After his conviction and sentence were entered, Goldberg filed a rule 3.800(b)(2) motion to correct the sentencing error. Id. In response to the motion, the trial court entered an order reiterating the rationale for the prison sentence given by the trial court at the sentencing hearing, but failed to include a finding of possible public endangerment. Id. Because the trial court failed to correct its initial failure to make the requisite written findings, the Fifth District held:

> The trial court may well have been able to correct its initial failure to make the necessary written findings required by section 775.082(10) by doing so in response to Goldberg's rule 3.800(b)(2) motion. However, it failed to do so. On remand, the trial court must sentence Goldberg to a nonstate prison sanction.

Goldberg, 76 So. 3d at 1074 (citation omitted). The district courts are thus in conflict regarding whether a trial court may impose a sentence that departs from the CPC on remand where the trial judge failed to comply with the requirements of

- 4 -

section 775.082(10) mandating the filing of written findings, both at the original sentencing and in response to the defendant's rule 3.800(b)(2) motion.

## ANALYSIS

The issue in this case concerns whether a trial court may lawfully impose a prison sanction under section 775.082(10) on remand for resentencing. Because this is a pure question of law, our review is de novo. See Bradley James Jackson v. State, 64 So. 3d 90, 93 (Fla. 2011). Bryant argues that section 775.082(10) imposes a mandatory requirement for a judge to enter a written order finding that imposition of a nonstate prison sentence presents a danger to the public, and that failure to comply with the statute even after a rule 3.800(b)(2) motion raising the issue precludes the trial court from again imposing an enhanced departure sentence on remand. The State argues that resentencing is an entirely new proceeding where the trial court may depart so long as it complies with the statute. To address the issue, we begin by reviewing our decisions concerning departure sentences both prior to and after the enactment of the CPC. We then address the effect of section 775.082(10), before concluding that Shull and Pope v. State, 561 So.2d 554 (Fla.1990), are still applicable law.

### Departure Sentences Before the Criminal Punishment Code

Generally, under sentencing schemes in existence prior to the CPC, when the reasons provided by the trial court in support of a departure are found invalid on

appeal, resentencing following remand must be within the guidelines.  See Shull, 515 So. 2d at 750; Roberts v. State, 547 So. 2d 129, 130-31 (Fla. 1989); Williams v. State, 492 So. 2d 1308, 1309 (Fla. 1986).   We begin our analysis with Shull, wherein the defendant was sentenced to a ten-year upward departure sentence based solely on the habitual offender statute.  Shull, 515 So. 2d at 749.  The prisoner sought a writ of habeas corpus alleging that he was entitled to be released because his sentence had been served.  Id.  The State conceded that Shull was entitled to resentencing, but argued that he was not entitled to release because the trial court could justify the reason for its departure on remand.  Id.  We disagreed, noting that "[g]enerally, when all of the reasons stated by the trial court in support of departure are found invalid, resentencing following remand must be within the presumptive guidelines sentence."  Id. (citing Williams, 492 So. 2d 1308; Foister v. State, 510 So. 2d 371 (Fla. 1st DCA 1987); Royal v. State, 508 So. 2d 1313 (Fla. 2d DCA 1987); Carter v. State, 485 So. 2d 1292 (Fla. 4th DCA), rev. denied, 494 So. 2d 1149 (Fla. 1986)).  We further observed that some district courts were distinguishing "the situation where the only reason given for departure was valid at the time . . . considered, . . . but was later invalidated by this Court."  Id. (emphasis in original).  The district courts were permitting the trial courts on remand to again depart from the guidelines if the new reasons given both existed at the time of the original sentencing and were valid reasons for departure.  Id. at 749-50 (citing

Brumley v. State, 512 So. 2d 220 (Fla. 1st DCA 1987); Brewer v. State, 502 So. 2d 1367 (Fla. 2d DCA 1987); Morganti v. State, 510 So. 2d 1182 (Fla. 4th DCA 1987); Central Bell v. State, 500 So. 2d 217 (Fla. 1st DCA 1986). But see Albury v. State, 503 So. 2d 460 (Fla. 3d DCA 1987); Wade v. State, 513 So. 2d 1358 (Fla. 2d DCA 1987); Davis v. State, 514 So. 2d 1155 (Fla. 2d DCA 1987)). Ultimately, we determined that there was

> no reason for making an exception to the general rule requiring resentencing within the guidelines merely because the illegal departure was based upon only one invalid reason rather than several. We believe the better policy requires the trial court to articulate all of the reasons for departure in the original order. To hold otherwise may needlessly subject the defendant to unwarranted errors to justify the original sentence and also might lead to absurd results.

Shull, 515 So. 2d at 750. Accordingly, we held "that a trial court may not enunciate new reasons for a departure sentence after the reasons given for the original departure sentence have been reversed by an appellate court." Id. And, "We believe the better policy requires the trial court to articulate all of the reasons for departure in the original order." Id.

The rationale underlying our decision in Shull is clear: a trial court may impose only a sentence within the guidelines when resentencing a defendant on remand and therefore "may not enunciate new reasons for a departure sentence after the reasons given for the original departure sentence have been reversed by an appellate court" because we recognized the need to avoid multiple appeals, absurd

results, and "unwarranted efforts to justify the original sentence." Id. We later acknowledged that implicit in this ruling was our "desire to preclude the possibility of a judge providing an after-the-fact justification for a previously imposed departure sentence." Jones v. State, 559 So. 2d 204, 206 (Fla. 1990); but cf. State v. Betancourt, 552 So. 2d 1107, 1108 (Fla. 1989) (" '[I]t is proper for a judge to reconsider whether a departure from the guidelines is appropriate . . . on remand' when the trial judge has not yet had an opportunity to consider reasons for departure.") (quoting Roberts, 547 So. 2d at 131); Jones, 559 So. 2d at 206 (distinguishing Shull on the grounds that "[t]his was not a case where the judge relied upon a reason for departure that was later declared invalid but, rather, one in which the judge considered his sentence to be one to which the guidelines did not apply.").

Moreover, in State v. Alfred Floyd Jackson, 478 So. 2d 1054, 1055 (Fla. 1985) receded from on other grounds, Wilkerson v. State, 513 So. 2d 664 (Fla. 1987), we rejected the argument that oral statements made by the trial judge during sentencing are sufficient to justify departure from the guidelines.[1] Alfred Floyd

_____

1. However, after Pope, we distinguished a trial court's failure to provide written reasons for an orally pronounced downward departure sentence and held that such failure did not necessarily render the sentence illegal. See Smith v. State, 598 So. 2d 1063 (Fla. 1992). A downward departure sentence may be affirmed on appeal when the trial court orally pronounced valid reasons for departure at the sentencing hearing, but inadvertently failed to file written reasons. Id. at 1067 (upholding a downward departure sentence when a trial court directed the State to

<u>Jackson</u>, 478 So. 2d at 1055.  We adopted as our own the reasoning provided by Judge Barkett in <u>Boynton v. State</u>, 473 So. 2d 703 (Fla. 4th DCA 1985):

> The alternative of allowing oral pronouncements to satisfy the requirement for a written statement is fraught with disadvantages which, in our judgment, compel the written reasons.
>
> First, it is very possible . . . that the "reasons for departure" plucked from the record by an appellate court might not have been the reasons chosen by the trial judge were he or she required to put them in writing.  Much is said at hearings by many trial judges which is intentionally discarded by them after due consideration and is deliberately omitted in their written orders.
>
> Second, an absence of written findings necessarily forces the appellate courts to delve through sometimes lengthy colloquies in expensive transcripts to search for the reasons utilized by the trial courts.
>
> . . . .
>
> Lastly, the development of the law would best be served by requiring the precise and considered reasons which would be more likely to occur in a written statement than those tossed out orally in a dialogue at a hectic sentencing hearing.  The efforts of the State of Florida to provide badly needed reforms in the sentencing aspect of the criminal justice system are in the embryonic stages.  A mammoth effort has been expended by the Legislature and by the Sentencing Guidelines Commissions, past and present, to develop some uniformity and to respond to some of the major problems which surround the entire sentencing process.  For the first time in this state, a body of law is being developed regarding considerations which may or may not be appropriate in sentencing criminal defendants.  This effort would best be served by requiring the thoughtful effort which "a written statement providing clear and convincing reasons" would produce.  This, in turn, should provide a more precise, thoughtful, and

write on the defendant's scoresheet the reason for the downward departure, but the State failed to do so); <u>see also</u> <u>Pease v. State</u>, 712 So. 2d 374 (Fla. 1997).

- 9 -

meaningful review which ultimately will result in the development of better law.

Alfred Floyd Jackson, 478 So. 2d at 1055-56 (quoting Boynton, 473 So. 2d at 706-07).  Accordingly, we provided a rationale for requiring trial courts to provide written reasons for departure at the time of sentencing.

> The legislature and this Court, by statute and rule, have clearly mandated written orders to assure effective appellate review. . . .  To accept [an alternative] interpretation would effectively change the rule and statute to mean that justification for a departure need only be found by an examination of the record.  Such an interpretation was the intent of neither the legislature nor this Court in directing that any departure be explained in writing.

Id. at 1056 (footnote omitted).  The combination of our reasoning in Shull and Alfred Floyd Jackson foreshadowed our eventual decision in Pope, 561 So. 2d 554—trial courts must give valid, written reasons for imposing a sentence that represents a departure from the guidelines at the time of sentencing.

In Pope, we pronounced a bright-line rule on this issue:  "when an appellate court reverses a departure sentence because there were no written reasons, the court must remand for resentencing with no possibility of departure from the guidelines."  Pope, 561 So. 2d at 556 (citing Shull, 515 So. 2d at 750; Alfred Floyd Jackson, 478 So. 2d at 1055[2]).  In his concurring opinion, Justice Grimes explained

---

2. This Court noted that it was receding from its decision in Barbera v. State, 505 So. 2d 413 (Fla. 1987) (permitting a trial judge to provide written reasons for departure on remand).

that precluding the trial court from reimposing a sentence beyond the guidelines was necessary because "[o]therwise, there would be no practical way to insure that trial judges would employ the necessary written statement in imposing departure sentences." Pope, 561 So. 2d at 556 (Grimes, J., concurring); see also Donaldson v. State, 722 So. 2d 177, 188-89 (Fla. 1998). We recognized that the "failure of trial courts to provide written reasons inappropriately requires appellate courts to cull through the sometimes extensive sentencing colloquy in search of 'reasons' supporting departure, thereby making possible results that are imprecise and unintended by the trial court." Pope, 561 So. 2d at 555-56 (citing Alfred Floyd Jackson, 478 So. 2d at 1056).

In summary, when any upward departure sentence is vacated, a guidelines sentence must be imposed on remand regardless of whether the trial court originally erred by (1) basing the departure sentence on an invalid reason, (2) failing to file the reasons supporting the sentence in a written order, or (3) making oral findings supporting departure but failing to file a written order.

## Departure Sentences Post-CPC

The CPC governs all noncapital felony offenses committed on or after October 1, 1998. The establishment of the CPC in 1998 made substantial changes to the application of the sentencing guidelines. Jones v. State, 813 So. 2d 22, 25 (Fla. 2002). For instance, we have observed:

As with the sentencing guidelines, a single scoresheet for all offenses is used for CPC sentencing. However, a single sentencing range is not established under the CPC as occurred under the prior guidelines. "The permissible range for sentencing shall be the lowest permissible sentence up to and including the statutory maximum . . . for the primary offense and any additional offenses before the court for sentencing. The sentencing court may impose such sentences concurrently or consecutively."

Moore v. State, 882 So. 2d 977, 985 (Fla. 2004) (quoting § 921.0024(2), Fla. Stat. (1999)).

We verified the constitutionality of the CPC in Hall v. State, 823 So. 2d 757 (Fla. 2002), and first expressed the purpose of the CPC:

The expressed legislative purpose under the Code is articulated thusly: "The primary purpose of sentencing [pursuant to the Code] is to punish the offender. Rehabilitation is a desired goal of the criminal justice system but is subordinate to the goal of punishment." § 921.002(1)(b), Fla. Stat. (Supp. 1998). "The penalty imposed [for an offense] is commensurate with the severity of the offense and the circumstances surrounding [it]." § 921.002(1)(c), Fla. Stat. (Supp. 1998). In addition, "[t]he severity of the sentence increases with the length and nature of the offender's prior record." § 921.002(1)(d), Fla. Stat. (Supp. 1998).

Hall, 823 So. 2d at 759.

After the Legislature enacted the CPC, we issued a narrowly tailored decision holding that when an appellate court reverses a downward departure sentence because the trial court failed to provide written reasons for imposing the departure and the oral reason provided was determined to be invalid, the trial court is permitted on remand to impose a downward departure when it provides a valid

- 12 -

written reason for the departure.  Bradley James Jackson, 64 So. 3d at 91.  In that case, Jackson's CPC scoresheet indicated a recommended sentencing range of 13.95 months' to fifteen years' imprisonment.  Over the State's objections, the trial court imposed a downward departure sentence, orally stating specific reasons to support it.  Id.  The trial court, however, did not file written reasons as required by statute and rule.  Id.; see also § 921.00265(2), Fla. Stat.; Fla. R. Crim. P. 3.704(d)(27).  Citing our decisions in Shull and Pope, the First District Court of Appeal reversed and remanded for resentencing within the CPC and certified conflict with cases holding a departure sentence could again be imposed on remand.  State v. Bradley James Jackson, 22 So. 3d 817, 818-19 (Fla. 1st DCA 2009).  On review, we found that the "CPC is silent on how a trial court must resentence a defendant when the original departure sentence is reversed on appeal" and that "nothing within the CPC precludes the imposition of a downward departure sentence on resentencing following remand."  Bradley James Jackson, 64 So. 3d at 92-93.  Accordingly, we concluded that as long as the trial court "comports with the principles and criteria prescribed by the Code," the judge may again impose a departure on remand if the sentence is "supported by valid grounds."  Id. at 93.

**Section 775.082(10), Florida Statutes**

Our decision in <u>Bradley James Jackson</u> relied on the language of the CPC, which does not contemplate upward departure sentences, because generally the statutory maximum sentence is the highest possible sentence for any crime. The practice of upward departure sentences was reinstated in 2009, when the Legislature enacted subsection (10) of section 775.082, Florida Statutes, which became effective July 1 of that year. Ch. 09-63, § 1, Laws of Florida. The new subsection (10) provides:

> If a defendant is sentenced for an offense committed on or after July 1, 2009, which is a third degree felony but not a forcible felony as defined in [section] 776.08, and excluding any third-degree felony violation under chapter 810, and if the total sentence points pursuant to [section] 921.0024 are 22 points or fewer, the court must sentence the offender to a nonstate prison sanction. However, if the court makes written findings that a nonstate prison sanction could present a danger to the public, the court may sentence the offender to a state correctional facility pursuant to this section.

§ 775.082(10), Fla. Stat. (2009); <u>see also</u> Fla. R. Crim. P. 3.704(29) ("If the total sentence points equal 22 or less, the court must sentence the offender to a nonstate prison sanction unless it makes written findings that a nonstate prison sanction could present a danger to the public."). Thus, an upward departure to a prison sanction requires a written finding regarding danger to the public. This case presents the first time we will consider the propriety of upward departure sentences after a court's failure to provide written rationale since the CPC was enacted.

## The Case on Review

Below, the district court distinguished <u>Shull</u>, holding that because the trial court did not file written reasons to support the departure sentence, none were deemed invalid. <u>Bryant</u>, 93 So. 3d at 383. Accordingly, it reasoned that the trial court could again impose a departure sentence because the harm <u>Shull</u> sought to prevent—after-the-fact justifications for a sentence—was not implicated. <u>Id.</u> However, the district court did not take into account our decision in <u>Pope</u>, which equated the failure to provide written reasons with the failure to provide a valid reason. <u>Pope</u>, 561 So. 2d at 556. Further, we recognize that the applicable statutes for imposing either an upward or downward departure sentence require the trial court to enter written findings. <u>See</u> §§ 775.082(10), 921.0025-.0026(2), Fla. Stat. Thus, the trial court's duty at sentencing is clear, and a court's failure to comply is error.

We have previously acknowledged that <u>Shull</u> and <u>Pope</u> continue to apply under the CPC except in cases involving habitual felony offender sentencing. <u>State v. Collins</u>, 985 So. 2d 985, 990-92 (Fla. 2008); <u>see also</u> Fla. R. Crim. P. 3.704(b) ("Existing case law construing the application of sentencing guidelines will continue as precedent unless in conflict with the provisions of this rule or the 1998 Criminal Punishment Code.") In <u>Collins</u>, the district court reversed a habitual offender sentence because "the State presented insufficient evidence establishing

- 15 -

the predicate convictions" and remanded for resentencing, specifically disallowing the presentation of new evidence. <u>Collins</u>, 985 So. 2d at 987. On review, while we first determined that resentencing is a new proceeding where the court is not limited by the evidence originally presented, <u>id.</u> at 989, we specifically noted that our decision in <u>Shull</u> was not implicated. <u>Id.</u> at 990-92 (holding that because a habitual offender sentence need not be justified with written reasons, "the concerns <u>Shull</u> addressed do not apply in this context.") We, likewise, find the district court's reliance on <u>Collins</u> to be misplaced because <u>Shull</u> and <u>Pope</u> are both implicated by the decision below and were not considered.

## CONCLUSION

For the reasons explained above, we quash the Second District's decision in <u>Bryant</u> and approve the decision of the Fifth District in <u>Goldberg</u>. We remand this cause to the district court for further proceedings in accordance with this opinion.

It is so ordered.

LABARGA, C.J., and PARIENTE, LEWIS, and QUINCE, JJ., concur.
CANADY, J., dissents with an opinion, in which POLSTON, J., concurs.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

CANADY, J., dissenting.

Today, the Court reaffirms the unwarranted presumption of fictitiousness previously announced in Shull v. Dugger, 515 So. 2d 748 (Fla. 1987). Because the Court's holding ignores our longstanding precedent regarding the de novo nature of resentencing and unjustifiably restricts the statutory discretion of Florida's circuit court judges, I dissent.

Since the trial court here failed to enter the requisite "written findings" supporting imposition of the sentence to a state correctional facility under section 775.082(10), Florida Statutes, the district court was correct to reverse for a de novo resentencing at which the trial court could again impose an upward departure sentence if the trial court supported the sentence with the statutorily required written findings. Bryant v. State, 93 So. 3d 381, 383 (Fla. 2d DCA 2012). There is no sensible reason that a sentencing judge's error in this context should be beyond remedy. The judicial blunder at issue here should not preclude the sentencing judge on remand from protecting the public from a defendant who "could present[] a danger to the public." § 775.082(10), Fla. Stat. (2009).

In remanding for de novo resentencing, the Second District Court of Appeal relied on our decision in State v. Collins, 985 So. 2d 985 (Fla. 2008). Although Collins involved a habitual offender sentence, this Court's reasoning on de novo resentencing is applicable here. The district court in Collins reversed the

defendant's sentence because insufficient evidence supported the defendant's

habitual offender designation and remanded for resentencing, specifically

disallowing the presentation of new evidence. Id. at 986. On review, this Court

reiterated, "we have concluded that 'resentencing entitles the defendant to a de

novo sentencing hearing with the full array of due process rights.' " Id. at 989

(citing Trotter v. State, 825 So. 2d 362, 367-68 (Fla. 2002)). We concluded that

"because a resentencing is a new proceeding, the court is not limited by the

evidence originally presented." Collins, 985 So. 2d at 989.

More recently, in State v. Fleming, 61 So. 3d 399, 406 (Fla. 2011), we

acknowledged that "this Court has long held that where a sentence has been

reversed or vacated, the resentencings in all criminal proceedings, including death

penalty cases, are de novo in nature." See also Teffeteller v. State, 495 So. 2d 744,

745 (Fla. 1986) (stating that "resentencing should proceed de novo on all issues

bearing on the proper sentence"). In resentencing proceedings, both the defendant

and the State may present evidence, and the State must produce evidence to prove

anew any sentencing factors established at the prior sentencing. Fleming, 61 So.

3d at 406. Moreover, "the decisional law in effect at the time of the resentencing

or before any direct appeal from the proceeding is final applies." Id. at 407. Thus,

> [t]he trial court has discretion at resentencing—within certain
> constitutional confines—to impose [a] sentence using available
> factors not previously considered. See [State v. Scott, 439 So. 2d 219,
> 221 (1983)] ("Nor has the plight of the trial court seeking to impose a

new sentence been an easy one, fraught as it is with constitutional challenges and considerations of post-sentencing infractions which would allow a material increase in the sentence, pursuant to North Carolina v. Pearce, 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969).").

Id. at 406 (emphasis added); see Trotter, 825 So. 2d at 368-69 (holding that trial court's use at resentencing of a drug multiplier not applied in original sentence did not result in more severe sentence which would raise a presumption of vindictiveness).

In Bradley James Jackson v. State, 64 So. 3d 90, 91 (Fla. 2011), we addressed the question of whether at resentencing under the Criminal Punishment Code (CPC), a trial court could again impose a downward departure sentence if the court failed to enter the requisite written findings to support the original sentence. We noted that the CPC was "silent on how a trial court must resentence a defendant when the original departure sentence is reversed on appeal" and determined that "nothing within the CPC precludes the imposition of a downward departure sentence on resentencing following remand." Id. at 92, 93. Although the sentence in the instant case was imposed under section 775.082(10), which concerns upward—not downward—departure sentences, the silence of the CPC regarding sentencing options on remand is as pertinent here as it was in Bradley James Jackson.

Despite the line of cases in which this Court held that resentencing was a de novo proceeding limited only by constitutional considerations, the Court dispenses with this principle here. In <u>Shull</u>, this Court surmised—without any evidence or findings of judicial wrongdoing—that where a trial court's order contained no valid reasons for departure, the trial court could not hold a de novo resentencing hearing on remand and again impose a departure sentence because such a process "<u>may needlessly subject the defendant to unwarranted efforts to justify the original sentence and also might lead to absurd results</u>." 515 So. 2d at 750 (emphasis added). The Court repeated this baseless presumption in <u>Pope v. State</u>, 561 So. 2d 554, 556 (Fla. 1990), applying it to hold that where no reasons for departure were provided in writing, the trial court was prohibited from departing from the guidelines on remand. Contrary to <u>Shull</u>, it should not be presumed that judges will abuse their discretion by providing pretextual reasons to justify upward departure sentences on remand, any more than it should be presumed that judges will provide pretextual reasons for downward departures on remand.

Accordingly, I would uphold the decision of the Second District Court in <u>Bryant</u> and disapprove the decision of the Fifth District Court in <u>Goldberg v. State</u>, 76 So. 3d 1072 (Fla. 5th DCA 2011).

POLSTON, J., concurs.

Application for Review of the Decision of the District Court of Appeal – Certified Direct Conflict of Decisions

Second District - Case No. 2D10-5135

(Hillsborough County)

James Marion Moorman, Public Defender, and Megan Olson, Assistant Public Defender, Tenth Judicial Circuit, Bartow, Florida,

for Petitioner

Pamela Jo Bondi, Attorney General, Tallahassee, Florida, and Robert Jay Krauss, Bureau Chief, and Ronald Napolitano, Assistant Attorney General, and Christina Zuccaro, Assistant Attorney General, Tampa, Florida,

for Respondent